630 A.2d 974

**CITY OF HARRISBURG, Petitioner,**

v.

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 13, 1993.

Decided Aug. 19, 1993.

Louis B. Kupperman and J. Robert Stoltzfus, for petitioner.

Charles B. Zwalley, Alexander Henderson, III, and Nels Taber, for respondent.

Before CRAIG, President Judge, SMITH, J. (P.), and KELTON, Senior Judge.

CRAIG, President Judge.

The City of Harrisburg appeals an interlocutory order of the Pennsylvania Environmental Hearing Board denying the city's motion for partial summary judgment. The board subsequently denied reconsideration, but granted the city's alternative request to certify the appeal for this court's interlocutory review, because the board's pivotal legal conclusions involve a controlling question of law as to which there is substantial ground for difference of opinion, and this court's review of the issue would materially advance the ultimate resolution of the dispute.

Factually, this case involves the city's waste disposal facility, which burns waste, generates steam, and sells the energy produced in the process to utility companies. The city accepts waste generated in other municipalities, both within and outside Dauphin County. The county adopted a waste management plan pursuant to the Municipal Waste Planning, Recycling and Waste Reduction Act, Act of July 28, 1988, P.L. 556, 53 P.S. §§ 4000.101–4000.1904, which was submitted to DER

by Dauphin County's Intermunicipal Solid Waste Authority (authority). The authority was created under the Act as the county's agent for the purposes of developing a county-wide waste management program in accordance with the Act.

## 1. Procedural Background

This dispute began when the Pennsylvania Department of Environmental Resources (DER) approved the plan, which precludes the city from accepting any waste generated in any Dauphin County municipality other than the city.

The city appealed DER's approval of the plan to the board. The parties conducted discovery, and both the city and the authority filed motions for partial summary judgment relating to the question of whether the plan violated section 304(e) of the Act by precluding municipalities within the county from entering contracts for the acceptance of waste with facilities other than the facilities designated in the county's plan. The board denied both motions for summary judgment.

After the board denied the motions, the parties entered into and filed with the board a joint stipulation. The city then filed a second motion for partial summary judgment based solely on the issue of whether the plan violates section 304(e) of the Act. The board denied the city's second motion for partial summary judgment. The city filed its motion for reconsideration and its alternative motion for certification of an interlocutory appeal. The board denied the reconsideration motion but amended its original order to certify the order for interlocutory review as provided by 42 Pa.C.S. 702(b).

The city filed a petition for permission to appeal the interlocutory order, which this court granted.

## 2. Relevant Provisions of the Plan and Applicable Statutory Provisions

Section 501(a) of the Act requires all counties in Pennsylvania to submit within two-and-one-half-years after the effective date of the Act, which was sixty days after July 28, 1988, "an officially adopted municipal waste management plan for mu-

nicipal waste generated within its boundaries." Under the Act, a county must designate the facility or facilities which are to accept waste generated in the county. Under the terms of the Act, local municipalities within a county may dispose of their waste only at those facilities that are designated in the county plan to receive waste.

Dauphin County's plan designates two facilities to receive county-generated waste. Dauphin Meadows Landfill, formerly known as Fulkroad Landfill, is located in the northern part of the county and is designated to receive 70% of the county's municipal waste. Modern Landfill, in York County, is designated to receive the remaining 30% of generated waste from Dauphin County. The county adopted enforcement provisions in the county's Municipal Waste Management Ordinance. Additional enforcement provisions are provided in the authority's Rules and Regulations.

The plan does provide three exceptions to the otherwise mandated flow of generated waste to the designated facilities: (1) waste generated within the city is to be disposed at the city's waste resource recovery facility; (2) waste generated in Swatara Township and Highspire Borough is to be disposed at the York County Incinerator, in accordance with the terms of a twenty-five year contract between that facility and the two municipalities; and (3) waste generated in other municipalities which have similar pre-existing contracts with other waste disposal facilities may continue to be disposed of at those facilities.

As indicated above, the plan purports to preclude Dauphin County municipalities other than the city from entering contracts for waste disposal with the city's facility.

Before the board, the city argued that the plan violates section 304(e) of the Act. Section 304 provides:

**Powers and duties of municipalities other than counties (a) Responsibility of other municipalities.**—Each municipality other than a county shall have the power and its duty shall be to assure the proper and adequate transportation, collection and storage of municipal waste which is generated

or present within its boundaries, to assure adequate capacity for the disposal of municipal waste generated within its boundaries by means of the procedure set forth in section 1111, and to adopt and implement programs for the collection and recycling of municipal waste or source-separated recyclable materials as provided in this act.

**(b) Ordinances.—**

(1) In carrying out its duties under this section, a municipality other than a county may adopt resolutions, ordinances, regulations and standards for the recycling, transportation, storage and collection of municipal wastes or source-separated recyclable materials, which shall not be less stringent than, and not in violation of or inconsistent with, the provisions and purposes of the Solid Waste Management Act, this act and the regulations promulgated pursuant thereto.

(2) The host municipality shall have the authority to adopt reasonable ordinances concerning the hours and days during which vehicles may deliver waste to the facility and the routing of traffic on public roads to the facility. Such ordinances may be in addition to, but not less stringent than, not inconsistent with and not in violation of, any provision of the Solid Waste Management Act, any regulation promulgated pursuant to this act, any order issued under that act, or any permit issued pursuant to that act. Such ordinances found to be inconsistent and not in substantial conformity with this paragraph shall be superseded. Appeals under this paragraph may be brought before a court of competent jurisdiction.

**(c) Contracting of responsibility.—**A municipality other than a county may contract with any person to carry out its duties for the recycling, transportation, collection and storage of municipal waste and source-separated recyclable materials, if the recycling, transportation, collection or storage activity or facility is conducted or operated in a manner that is consistent with the Solid Waste Management Act, this act and the regulations promulgated pursuant thereto. Any such person shall be jointly and severally responsible

with the municipality other than a county when carrying out its duties for transportation, collection or storage activity or facility.

**(d) Designated sites.**—A municipality other than a county may require by ordinance that all municipal waste generated with its jurisdiction shall be disposed of or processed at a designated permitted facility. Such ordinance shall include an ordinance that is part of a plan approved under section 501(b). Such ordinance shall remain in effect until the county in which the municipality is located adopts a waste-flow control ordinance as part of a plan submitted to the department pursuant to section 501(a) or (c) and approved by the department. Except as provided in section 502(*o*), any such county ordinance shall supersede any such municipal ordinance to the extent that the municipal ordinance is inconsistent with the county ordinance.

**(e) Term and renewals of certain contracts.**—The governing body of a municipality other than a county shall have the power to, and may, enter into contracts having an initial term of five years with optional renewal periods of up to five years with persons responsible for the collection or transportation of municipal waste generated within the municipality ... *Nothing in this act shall impair municipalities, other than counties, from entering into disposal contracts under section 502(o).* (Emphasis added.)

**(f) Report.**—On or before February 15 of each year, each municipality other than a county that is implementing a recycling program shall submit a report to the county in which the municipality is located. The report shall describe the weight or volume of materials that were recycled by the municipal recycling program in the preceding calendar year.

Section 502 of the Act provides in relevant part as follows:

**Content of municipal waste management plans**

**(a) General rule.**—Except as provided in section 501(b), every plan submitted after the effective date of this act shall comply with the provisions of this section.

. . . . .

(*o*) **Noninterference with certain resource recovery facilities and landfills.—**

(1) No county municipal waste management plan shall interfere with the design, construction, operation, financing or contractual obligations of any municipal processing or disposal facility, including any reasonable expansion of an existing facility which meets any of the following requirements:

.    .    .    .    .

(v) The facility is a resource recovery facility or municipal waste landfill which, on or before the effective date of this act, to the department's satisfaction, meets all of the following criteria:

(A) The applicant has acquired ownership of the site.

(B) The applicant has agreements for disposal of municipal waste.

(C) The applicant meets one of the following:

(I) The applicant has a permit from the department on the effective date of this act.

### 3. *Analysis*

The question the city posed in its second motion for summary judgment, which this court must now consider is: "Does the Plan, and DER's approval thereof, violate Section 304(e) of Act 101 because it precludes local municipalities within Dauphin County from entering into disposal contracts with existing facilities, such as the City's Facility, as defined by Section 502(*o* )?"

Initially, we note that section 506 of the Act is not involved in this case. That section is a "grandfathering" provision which protects contracts that a facility entered into before a county adopted a waste management plan. In this case, the city is not seeking protection for contracts it entered into before the effective date of the county plan. Such contracts clearly would be protected under section 506. Rather, the city is seeking protection for itself and any other local municipalities in the county that may wish to enter into an agreement,

after the adoption and approval of the county's plan, for the city's acceptance and treatment of other local municipalities' waste.

The city first contends that the EHB misapprehended the city's argument, that the Act provides for checks and balances to limit the extent of a county's power with regard to the regulation of waste disposal. The city asserts that the EHB erred by placing inordinate emphasis on the provision in the Act giving counties the power to control waste flow by designating disposal sites. The city contends that placing such an emphasis on waste control is wrong because the primary purpose of the Act is to ensure that adequate capacity exists for disposal of waste generated within a county's boundaries over a ten-year period. Thus, the city argues, control of waste flow is only a means to an end, not an end in itself.

The city contends that subsections 502(b) and (c) of the Act, which (1) require counties, in developing plans, to "describe and explain the origin, content and weight or volume of municipal waste currently generated" and the expected content and weight or volume of waste expected to be generated "within the next ten years," (2) require counties in developing a plan to identify existing facilities and analyze available capacity and capacity available through expansion and (3) preclude counties from impairing "the use" of an existing facility's remaining capacity or capacity which could be made available through the reasonable expansion of such facilities, express an intent to keep the powers of counties in check.

■ Although the latter two provisions indicate that counties should consider existing facilities, there is no express affirmative requirement in the Act that counties must designate all existing facilities that have remaining or expandable capacity as disposal sites.

Although the control of waste flow may indeed only be a means to the primary end contemplated by the legislature, that counties ensure adequate disposal capacity, this court cannot ignore the plain language of the statutory provision vesting counties with the power to designate disposal sites.

■ The city asserts that, under section 502(b), the legislature intended counties to designate specific disposal sites only if the capacity of existing facilities cannot accommodate the waste disposal needs of local municipalities over the ten-year period. Otherwise, the city asserts, the control of flow, by counties, unnecessarily interferes with the free market.

However, the requirement that counties, in developing plans, must consider such factors does not necessarily lead to the conclusion that counties may exercise the statutory power to designate sites only where capacity within the county might be exhausted over the ten-year period.

This court agrees with DER's position, that one of the purposes of requiring counties to analyze existing capacity, in light of the grant of power to designate sites, must be to aid counties in developing a plan that will have the most economically advantageous terms for the entire county. By vesting counties with the power to designate sites and enter contracts with landfills and resource recovery facilities, counties are in a position to enter contracts that are economically advantageous to all local municipalities within the county.

■ With regard to the Act's provision directing that plans should not impair a facility's existing capacity, this court's conclusion is that the provision means only that a county plan and any regulations adopted pursuant to the plan cannot interfere with the use of facilities by entities other than municipalities within the county that are required under an adopted plan to dispose of their waste at a designated site.

■ The city's primary argument is that section 304(e), which states that "nothing in this act shall impair municipalities, other than counties, from entering into disposal contracts under section 502(o )," vests municipalities within the county with the right to enter contracts with the city for the acceptance of their waste, as they wish, because the city's facility is protected under section 502(o ), which provides in general that county plans shall not interfere with municipally owned facilities. However, section 304(e), in referring to "municipalities, other than counties," implicitly means only municipalities that

have facilities that are protected under section 502(*o* ), and not local municipalities in general; in other words, the reference is to municipalities as facility operators, not municipalities as customers of such facilities.

The EHB concluded that the right of the city's facility to enter into contracts with other county municipalities was not protected under those sections, § 304(e) and § 502(*o* ), because (1) the facility is not a "disposal" facility, but rather a resource recovery facility and (2) section 304(e) provides that the act shall not impair the power to enter contracts *under* section 502(*o* ); the provision does not state that the act shall not impair municipalities, other than counties, from entering contracts *with* facilities that fall within section 502(*o* ).

With regard to the use of the word "disposal" in section 304(e), the city asserts that the legislature was not consistent in using the term, because the Act, in some contexts, uses the word in the generic sense, rather than in the limited sense by which it is defined in section 103 the Act. Also, the city contends that, even if the legislature intended the term as used in section 304(e) to mean only disposal facilities, the city's facility, although falling within the Act's definition of a resource recovery facility, also falls within the definition of a disposal facility, because the incineration process creates ash, and disposal is defined as

> "[t]he deposition . . . or placing of solid waste into or on the land or water in a manner that the solid waste or a constituent of the solid waste enters the environment, is emitted into the air or is discharged to the waters of this Commonwealth.

The city may be correct in arguing that its facility, as a matter of statutory interpretation, could fall within both definitions and therefore be protected in its power to enter contracts in some respects under sections 304(e) and 502(*o* ). However, this court agrees with the EHB's conclusion that the city goes too far in its interpretation of section 304(e). The provision states only that county plans may not impair municipalities other than counties from entering contracts *under*

section 502(*o* ). The city improperly construes the statute to mean that local municipalities have the power to enter contracts *with* section 502(*o* ) facilities, as customers of those facilities.[1]

We agree with the EHB for two reasons. First, the Act contains provisions which give municipalities within a county the right to voice an objection to a proposed plan. Section 503 of the Act provides in pertinent part:

**(d) Adoption and ratification of plan.**—The governing body of the county shall adopt a plan within 60 days from the end of the public comment period. Not later than ten days following adoption of a plan by the governing body of the county, the plan shall be sent to municipalities within the county for ratification. If a municipality does not act on the plan within 90 days of its submission to such municipality, it shall be deemed to have ratified the plan. If more than one-half of the municipalities, representing more than one-half of the county's population as determined by the most recent decennial census by the United States Bureau of the Census, ratify the plan, then the county, within seven days of ratification, shall submit the plan to the department for approval.

**(e) Statement of objections.**—A municipality may not disapprove of a proposed county plan unless the municipality's resolution of disapproval contains a concise statement of objections to the plan. Each municipality disapproving a plan shall immediately transmit a copy of its resolution to the county and the advisory committee. A conditional approval shall be considered a disapproval.

Furthermore, section 504 of the Act provides that, where a plan is not ratified by the required number of municipalities under section 503, the county must submit a recommendation regarding a revised plan. Once a revised plan is adopted, municipalities must again decide whether or not to ratify the plan. If, on the consideration of the revised plan, an insuffi-

1. Although none of the parties have raised the issue of standing, we question whether the city would have standing to raise the rights of other local municipalities to enter contracts with the city.

58

cient number of municipalities decide not to ratify the revised plan, the county must submit the plan to the department for approval.

Thus, the Act contemplates that, where a majority of local municipalities approve the plan, the remaining municipalities must comply with the plan, once the department approves the plan.

Secondly, this court concludes that our interpretation of the Act does not render meaningless the rights afforded facilities that are protected under section 502(o), because such facilities are not precluded from entering contracts with (1) other states or (2) other counties within Pennsylvania which may designate the city's facility as a site for depositing their waste.

Accordingly, this court concludes that the Environmental Hearing Board did not err in concluding that the disposal site designations in the county plan do not violate section 304(e) of the Act. The board's order denying summary judgment to the city and granting summary judgment in favor of the Dauphin County Intermunicipal Solid Waste Authority is affirmed.

## ORDER

NOW, August 19, 1993, the order of the Environmental Hearing Board, dated February 17, 1993, denying the City of Harrisburg's motion for summary judgment and granting summary judgment in favor of the Dauphin County Intermunicipal Solid Waste Authority, is affirmed.